## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

LEROY ARNOLD SMITH et al.,

      Plaintiffs,

vs.                          CASE NO. 5:08-cv-84/RS/AK

UNITED STATES OF AMERICA et al.,

      Defendants.

_____/

## ORDER

Before me are government Defendants' Motion to Dismiss (Doc. 14),

Plaintiffs' Response in Opposition (Doc. 32), and government Defendants' Reply

Brief (Doc. 46) .

### I.    Background

Plaintiffs claim that the government Defendants have operated a recycling

program at the Federal Correctional Institute in Marianna, Florida ("FCI

Marianna") and other Federal Bureau of Prisons facilities throughout the United

States since 1994. (Compl. ¶¶ 4-5).  Plaintiffs allege that as a result of the recycling

program operated by the government Defendants they have been exposed to toxic

substances and have suffered various injuries and aliments as set forth in the complaint. They claim that the exposures were "directly and indirectly caused by processing computer processing units (CPUs), Cathode Ray Tubes (CRTs), and other recycling operations." (Compl. ¶ 7).

As relief, Plaintiffs seek a declaratory judgment regarding their rights, an injunction against the government Defendants based on those rights, and other equitable relief such as the tolling of any applicable statute of limitations periods. (Compl., Count I). Plaintiffs also seek compensatory damages for alleged Eighth Amendment violations by the individual defendants (Compl., Count II), and complain that the government Defendants breached their "common law duty" to warn the Plaintiffs regarding dangers in connection with their employment. Plaintiff Smith seeks relief for himself against the government Defendants for alleged retaliation (Compl., Count V).

Plaintiffs Foster, Lipford, McElvey, McKinney, and Utterback are currently employed by the defendant Federal Bureau of Prisons (BOP) at FCI Marianna. (Doc. 14-16, Declaration of Jeannie Bratschi).  Ms. Foster alleges exposure during a nine month period in 2000. (Compl. ¶ 14).  Mr. Lipford alleges that he was exposed as a cook until 2001, and from the complaint it is unclear whether he contends exposure after 2001. (Compl. ¶¶ 24-25). Ms. McElvey contends that she has worked at FCI Marianna since 1998 and experienced exposure, but does not

state when the last exposure occurred or whether such exposure is continuing. (Compl. ¶¶ 27-29). Plaintiff McKinney, who does not allege any continuing exposure, contends (without providing any dates or a time frame) that he was exposed when he worked overtime at the FCI Marianna recycling warehouse. (Compl. ¶¶ 30-34). Plaintiff Utterback appears to allege exposure between 2000 and 2001 only. (Compl. ¶¶ 46-49). Plaintiff Leroy Smith is currently employed at the Federal Correctional Complex, Tucson, Arizona, and has never worked at FCI Marianna. (Doc. 14-16, ¶ 3(a). Plaintiff Leroy Smith does not contend exposure at FCI Marianna, nor is it clear from the complaint when he was exposed, where the expose occurred, or whether such exposure is continuing.

Plaintiffs Cobb (separation April 2, 2005; Doc. 14-16, ¶ 3(b)), Olds (separation April 6, 2002; Doc. 14-16, ¶ 3(i)), Abdul-Saboor Rushdan (separation December 31, 2007; Doc. 14-16, ¶ 3(j)), and Ms. Tanya Smith (separation April 14, 2007; Doc. 14-16, ¶ 3(k)), were employees at FCI Marianna, but are no longer employed by the BOP. (Doc. 14-16). Plaintiff Garwood is a former BOP employee who worked at FCI Fort Dix, New Jersey, and has never been employed at FCI Marianna. (Doc. 14-16, ¶ 3(d)). Plaintiff Hunter contends that she is a former BOP employee who worked at FCI Marianna between 1988 and 1999. (Compl. ¶ 21-23).

Each of the named inmates are no longer incarcerated by the BOP: Plaintiff Carrol was released on October 26, 2004 (Docs. 14-2, 14-3); Plaintiff Johnson was

released on August 6, 2004 (Docs. 14-4, 14-5); Plaintiff Molsbee was released on

August 12, 2005 (Docs. 14-6, 14-7); Plaintiff Thomas was released on August 11,

2005 (Docs. 14-7, 14-8); and Plaintiff William was released on September 5, 2003

(Docs. 14-9, 14-10). Plaintiffs Jane Does 3 and 4 contend they are no longer

incarcerated. (Compl. ¶¶ 76-78). The only two plaintiffs allegedly incarcerated by

BOP are Jane Does 1 and 2. (Compl. ¶¶ 74-75).

The public plaintiffs, or as the complaint labels them "vendors and other

third persons," are as follows: Ms. Lamar, who contends that she was exposed to

toxic substances between 2000 and 2002 by way of dust brought home by her

husband who would make purchases from FCI Marianna (Compl. ¶¶ 80-83); Ms.

Mayes, who alleges, without providing any time frame, that in the past she made

several trips to FCI Marianna to purchase and sell electronic equipment (Compl. ¶¶

87-89); Mr. Norris, who visited FCI Marianna as a vendor between 1995 and 2001

(Compl. ¶¶ 90-92); Mr. Norris' wife, Jane Norris, who washed her husband's

clothes between 1995 and 2001 (Compl. ¶ 94); and former employee Abdul-

Daboor Rushdan's wife, Akilah Rusdan, who alleges exposure while cleaning her

husband's clothes when he was employed at FCI Marianna between 1988 and 2007

(Compl. ¶¶ 96-98, 39).

The government Defendants include the United States, U.S. Department of

Justice (DOJ), Federal Bureau of Prisons (BOP), the Federal Prison Industries, Inc.

(referred to as FPI and UNICOR), and individual Defendants sued in their official capacities.  The government Defendants have moved to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction), 12(b)(3) (improper venue), 12(b)(6) (failure to state a claim), and 8(a) (insufficient pleadings).

## II.    Standard of Review

In order to overcome a motion to dismiss, a plaintiff must allege enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).  A wholly conclusory statement of a claim will not suffice. *Id*. When ruling on a motion to dismiss, all factual allegations in the complaint must be accepted as true. *Id*.

## III.   Discussion

In their response, Plaintiffs contend that they are not seeking any monetary damages, but instead, assert that they are "seeking only equitable and declaratory relief requiring the Defendants to provide them disclosures regarding the dangers and safety health risks associated with exposures to lead, cadmium and other toxic substances in connection with their employment, confinement, or other actions undertaken by Defendants which have directly caused such exposures." (See Doc. 32, p.10). Plaintiffs further allege that sovereign immunity is not applicable in this

action and that to the extent it is, section 702 of the Administrative Procedure Act (APA) provides a waiver. Finally, in their response Plaintiffs incorrectly, and without citation to any authority, assert that the Federal Whistleblower Protection Act (WPA), which is an amendment to and part of the Civil Service Reform Act (CSRA), does not preclude a request for declaratory relief.

Plaintiffs have clearly failed to identify a basis for this court's jurisdiction. To the extent Plaintiffs seek documents from the Government, which should have been sought under the Freedom of Information Act (FOIA), they have failed to exhaust their administrative remedies and cannot obtain relief here. Plaintiffs' claims do implicate sovereign immunity and they cannot utilize the APA to avoid that immunity. Furthermore, the WPA is the exclusive remedy for Plaintiff Leroy Smith's apparent whistleblower complaints and precludes declaratory relief.

## A.    Jurisdiction

Plaintiffs insist, throughout their response, that they are not seeking relief under FECA, IACA, or the FTCA. (See, e.g., Doc. 32, p. 10). Instead, they assert that they are seeking only declaratory and injunctive relief. Consequently, a plain reading of Plaintiffs' complaint reveals that they completely fail to identify any basis for this Court's jurisdiction against the Government Defendants under 28 U.S.C. § 1331.1. *See Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808 (1986) ("Under our longstanding interpretation of the current statutory

scheme, the question whether a claim 'arises under' federal law must be determined by reference to the 'well pleaded complaint.'"). Indeed, Plaintiffs acknowledge that they are unsure about what rights they have and ask the Court to advise them, in a declaratory order, as to what right exists, if any. (See Doc. 1, Count I, para. A: "Plaintiffs respectfully request entry of an order: A. Determining their respective rights and obligations . . . .").

It is, however, a plaintiff's burden to establish that jurisdiction lies in this court. *See, e.g., Krasny v. Waser*, 147 F. Supp. 2d 1300, 1303 (M.D. Fla. 2001) ("It is to be presumed that a cause lies outside this [Court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.") (citations omitted); *accord Catepillar Inc. v. Williams*, 482 U.S. 386, 391 (1987) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."). Here, Plaintiffs' apparent reliance on the Declaratory Judgment Act, 28 U.S.C. § 2201, and perhaps the Administrative Procedure Act (APA), is unavailing. The Declaratory Judgment Act "does not expand federal jurisdiction; the Act merely creates a new remedy in cases or controversies for which an independent basis of federal jurisdiction exists." *First Federal Sav. & Loan Ass'n of Lake Worth v. Brown*, 707 F.2d 1217, 1220 (11th Cir. 1983) (emphasis added).

And, likewise, the APA itself is not a grant of subject matter jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 105 (1977).

In their complaint, Plaintiffs also refer to information allegedly published by the U.S. Department of Labor, Occupational Safety and Health Administration (OSHA). (See Doc. 1, ¶ 116). The Occupational Safety and Health Act, 29 U.S.C. §§ 651-678, does not establish a private right of action against federal employers. *See, e.g., American Federation of Gov't Employees, AFL-CIO v. Rumsfeld*, 321 F.3d 139, 143-44 (D.C. Cir. 2003) ("[I]t is now well established that 'OSHA violations do not themselves constitute a private cause of action for breach.'") (citing *Crane v. Conoco, Inc.*, 41 F.3d 547, 553 (9th Cir. 1994)). Thus, OSHA violations, to the extent Plaintiffs have even attempted to assert one, do not (and cannot) provide a basis for their claims.

Accordingly, having failed to identify any basis for this Court's jurisdiction in the first instance, Plaintiffs' complaint must be dismissed.

## B.    Exhaustion of Remedies - FOIA

To the extent Plaintiffs seek agency records regarding the operations of the recycling program – e.g., documents that may satisfy Plaintiffs' pursuit of what they were handling – the Freedom of Information Act provides rights, enforceable in court, to obtain access to federal agency records. *See* 5 U.S.C. § 552.2 Thus,

federal question jurisdiction may exist under a FOIA dispute; but, "[t]he FOIA clearly requires a party to exhaust all administrative remedies before seeking redress in federal courts." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994). Indeed, the Eleventh Circuit has held that the exhaustion requirement is a condition precedent to filing suit, *id.*, and that it is the plaintiff's burden to "present proof of exhaustion of administrative remedies prior to seeking judicial review." *Hedley v. United States*, 594 F.2d 1043, 1044 (5th Cir. 1979).

Although Plaintiffs contend that they need not pursue their FOIA remedies, they offer no basis for such a contention. Indeed, in their complaint Plaintiffs assert that "Defendants have documents and can provide testimony required for Plaintiffs to obtain the information to evaluate their health and safety so that they can obtain treatment and pursue appropriate claims for compensation." (Doc. 1, ¶ 176 (emphasis added)). Plaintiffs then ask the Court to order the Government Defendants to produce those documents. (See Doc. 1, ¶ 177). Accordingly, to the extent Plaintiffs seek the production of such documents, the FOIA must be exhausted. *See* 5 U.S.C. § 552; *Taylor*, 30 F.3d at 1367.

Because the FOIA has not been pursued or exhausted by Plaintiffs, and there is no proof of exhaustion by Plaintiffs, Plaintiffs' request for an order by the Court directing the Government Defendants to produce the documents sought (see, e.g., Doc. 1, ¶ 176), must be denied.

### C.    Former Employees' Claims Are Moot

The former employees and inmates' requests for equitable relief are moot as a result of their termination from employment, *see, e.g., McKinley v. Kaplan*, 177 F.3d 1253, 1258 (11th Cir. 1999) (recognizing that resignation from employment rendered plaintiff's claim for injunctive relief moot); *Feit v. Ward*, 886 F.3d 848, 857 (7th Cir. 1989), or release from incarceration, *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (holding that claims for declaratory or injunctive relief become moot when an inmate is released or transferred to another facility because the inmate no longer has "'a legally cognizable interest in the outcome.'") (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980)); *see also Powell v. Barrett*, 246 F. App'x. 615, 619 (11th Cir. 2007) (inmate's equitable claims must be dismissed after his release rendered them moot); *Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir.1988). With respect to these Plaintiffs who are clearly no longer exposed to the materials they complain about, the issues presented – in particular the injunctive relief – is moot as they cannot be said to have "a legally cognizable interest in the outcome" of such relief." *Graham v. Butterworth*, 5 F.3d 496, 499 (11th Cir. 1993).

### D.    Sovereign Immunity and the Administrative Procedure Act

The United States' entitlement to sovereign immunity is well established. Indeed, "[p]robably no principle of law is better established than that the United

States may not be sued without its consent." *Simmons v. Vinson*, 394 F.2d 732,

735-6 (5th Cir. 1968).

Here, all of the relief sought by Plaintiffs against the government

Defendants, including the official capacity claims against the named individuals,

amounts to a suit against the United States as a sovereign. Specifically, "[t]he

general rule is that a suit is against the sovereign if the judgment sought would

expend itself on the public treasury or domain, or interfere with the public

administration, or if the effect of the judgment would be to restrain the

Government from acting, or to compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620

(1963) (quotations and citations omitted); *see also Simons*, 394 F.2d at 736.

Plaintiffs' request for equitable relief, if granted, would, by the very nature of

Plaintiffs' request, restrain the government from acting – namely, by enjoining it

from operating its recycling facilities. For Plaintiffs to proceed, therefore, they

must overcome the sovereign's immunity. *FDIC v. Meyer*, 510 U.S. 471, 475

(1994) ("Absent a waiver, sovereign immunity shields the Federal Government and

its agencies from suit.").

In this action, Plaintiffs have not established a basis for any waiver of

sovereign immunity. Plaintiffs reliance on the APA is misplaced. In their response,

Plaintiffs contend that although the Eleventh Circuit, in *Panola Land Buyers*

*Assoc. v. Shuman*, 762 F.2d 1550 (11th Cir. 1985), held that Panola's prayer for

injunctive relief was barred by sovereign immunity, their claims here for injunctive

relief should not be barred by sovereign immunity because "Defendants can avoid

any injunctive relief by taking several rather minor responsive actions." (Doc. 32,

p. 9). Because Plaintiffs provide no basis for this proposition, and because

enjoining the UNICOR recycling program would clearly interfere with public

administration (i.e., the Government's administration of its recycling program) and

compel or restrain the government's actions (i.e., by enjoining the operation of the

program or even any aspect of the program), this requested relief is against the

sovereign, as set forth in *Panola*, 762 F.2d at 1556, and *Dugan v. Rank*, 372 U.S.

609 (1963), for which the sovereign is entitled to immunity. Accordingly, the

Government Defendants are entitled to sovereign immunity as to Plaintiffs' claims

for injunctive relief.

Plaintiffs, again relying on *Panola*, also contend that their request for

declaratory relief is not shielded by sovereign immunity. In that case, Panola

challenged the Government's denial of its pre-application for federal housing

funding and sought a declaration of its rights under the National Housing Act of

1949. *Panola*, 762 F.2d at 1556 ("Panola's requested relief is properly understood

to entail a declaratory judgment defining its rights under the National Housing Act

of 1949, 42 U.S.C.A. § 1485."). Because the court concluded that defining the

plaintiff's rights under that statute would not interfere with public administration, it found sovereign immunity inapplicable.

Here, Plaintiffs declare that compelling the Government to provide them with the information they seek is analogous to the requested declaratory relief in *Panola*, and, therefore, that sovereign immunity should not apply. Plaintiffs' requests in this lawsuit, however, are not the same as or similar to the relief requested in *Panola*, where the plaintiff sought a definition of its rights under a specific federal statute. Instead, Plaintiffs here would have this Court compel the Government Defendants to determine what each Plaintiff may have been exposed to, what the level of the exposure was, what danger that exposure may have posed, and then to provide disclosures to the Plaintiffs regarding the exposure and health risks. (See Doc. 32, p. 9: "In Count III of the Complaint, Plaintiffs request that this Court enter an order 'requiring the Defendants provide full and fair disclosures, to be determined by the Court, regarding dangers associated with Plaintiffs' employment at the UNICOR recycling facilities, but limited to which hazardous substances they or their family members were exposed to, the levels of exposure and known or anticipated health risks associated with such exposures.'"). Far from simply defining their rights under a specific federal statute, Plaintiffs' request the Court to compel the government to undertake a plaintiff-by-plaintiff investigation and issue an opinion about each plaintiff in this case.

Even in *Panola*, the Court held that where the plaintiff asked the Court to compel government action, such as requiring the Government to consider Panola's application on a priority basis or to grant its application outright, the Government was entitled to sovereign immunity, as such relief would interfere with public administration. *Panola*, 762 F.2d at 1556. Similarly, I find that compelling the Government to compile and provide Plaintiffs with the information they seek here would interfere with public administration, and, therefore, that the Government Defendants are entitled to the defense of sovereign immunity. Indeed, the act of compelling the Government to carry out the tasks sought by Plaintiffs here would itself cause an entry of judgment by the Court, with the effect of compelling government action. Plaintiffs acknowledge in their response that the Government is entitled to sovereign immunity "when the judgment's effect is to compel or restrain the government's action," (Doc. 32, p. 6), and Plaintiffs request, if granted, would clearly compel significant Government action, for which Plaintiffs have identified no legal basis.

Accordingly, because Plaintiffs' requested relief would interfere with public administration and compel action by the Government, the Government Defendants are entitled to sovereign immunity.

Plaintiffs also assert that even if sovereign immunity is implicated, it is not a bar to the declaratory and injunctive relief they seek because 5 U.S.C. § 702

provides them with a waiver of the Government's immunity. The extent of

Plaintiffs' discussion of the APA consists of the following assertion made in their

response: "Plaintiffs are - at least in part - challenging a final agency decision by

the Government Defendants in the previous Bureau of Prisons investigation that

exposure to the toxic substances produced in connection with the UNICOR

recycling program is not sufficient to cause Plaintiffs and other persons to suffer

adverse health consequences." (Doc. 32, p. 6). Plaintiffs, however, oversimplify

the scope of section 702 of the APA, and completely fail to show how the APA is

even applicable in this action.

Chapter 7 of the APA provides that those adversely affected or aggrieved by

agency action may obtain judicial review of a final agency action, except to the

extent that "(1) statutes preclude judicial review; or (2) agency action is committed

to agency discretion by law." 5 U.S.C. §§ 701(a), 702, 704. If judicial review is

permitted, Chapter 7 authorizes the reviewing court to set aside agency action that

is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with law." 5 U.S.C. § 706(2)(A). The APA, however, outlines only procedure and

does not, itself, confer jurisdiction. *See Califano v. Sanders*, 430 U.S. 99, 105-06

(1977).

Section 702, identified by Plaintiffs, creates a cause of action for "[a] person

suffering legal wrong because of agency action, or adversely affected or aggrieved

by agency action within the meaning of a relevant statute." *Stockman v. Federal Elections Commission*, 138 F.3d 144, 151 (5th Cir. 1998). "'The relevant statute, of course, is the statute whose violation is the gravamen of the complaint.'" *Id.* (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 886 (1990)). Prudential standing, under the APA, also requires an underlying violation: "a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit." *Bennett v. Spear*, 520 U.S. 154, 162 (1997). Here, Plaintiffs fail to establish a claim under the APA, and fail to establish prudential standing, as they have failed to identify what the relevant statute or violation is that they contend is the gravamen of their complaint. Indeed, they fail to even identify the law with which the alleged agency action was not in accordance.

Since Plaintiffs fail to address the relevant statute that forms the basis of their claims under the APA, it is impossible to even assess the first hurdle that the Plaintiffs must clear, which is establishing that review is allowed under 5 U.S.C. § 701(a). *See Stockman*, 138 F.3d at 152. Arguably, however, given the lack of law presented to the Court by Plaintiffs, the action is committed to agency discretion. *See Heckler v. Chaney*, 470 U.S. 821, 830 (1985) ("[I]f no judicially manageable standards are available for judging how and when an agency should exercise its

discretion, then it is impossible to evaluate agency action for 'abuse of discretion.'").

Additionally, judicial authority to review the conduct of an administrative agency under the APA is "limited to cases challenging 'final agency action.'" *Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) (citing 5 U.S.C. § 704); *accord Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 61-62 (2004) ("Where no other statute provides a private right of action, the 'agency action' complained of must be '*final* agency action.'"). To determine what constitutes "agency action," the Court must first look to 5 U.S.C. § 551(13), which sets forth five categories of decisions made or implemented by an agency, all of which "involve circumscribed, discrete agency actions." *Id.* Then, to determine whether an agency action is "final," two conditions must be satisfied: "First, the action must mark the 'consummation' of the agency's decisionmaking process - it must not be of a merely tentative or interlocutory nature." *Bennett*, 520 U.S. at 177-78 (citations omitted). "And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Id.* at 178 (citations omitted).

Here, the only reference Plaintiffs make to any agency action, whether final or not, is to an alleged Bureau of Prison investigative report to which Plaintiffs

take issue. (See Doc. 34, p. 6). The reference made in their response appears to be describing a report also identified in Plaintiffs' complaint, which, according to Plaintiffs, "summarized findings regarding the UNICOR recycling program conducted at the Elkton, Ohio, site." (Doc. 1, ¶ 145). This so-called investigative report regarding Elkton, that Plaintiffs disagree with, does not fall within the definition of "agency action" set forth in 5 U.S.C. § 551(13), or, more specifically, "final agency action," as set forth in *Bennett*.

It appears that Plaintiffs are attempting the type of broad programmatic attack on the recycling program that is prohibited under the APA. That is, a plain review of the requested relief reveals that Plaintiffs are seeking the wholesale improvement of UNICOR's recycling program. This effort, however, is misplaced in the APA. A plaintiff "cannot seek *wholesale* improvement of this program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made." *Lujan v. National Wildlife Federation*, 497 U.S. at 891. As the Supreme Court has made clear: "Under the terms of the APA, respondent must direct its attack against some particular 'agency action' that causes it harm." *Id.* Because Plaintiffs fail to direct their attack against agency action, their claims cannot proceed under the APA, and the APA does not provide the waiver of sovereign immunity they seek.

### E.    Civil Service Reform Act

Plaintiff Leroy Smith contends, without citation to any authority, that this court has jurisdiction to consider Plaintiff's requested relief under the Whistleblower Protection Act (WPA). The Civil Service Reform Act (CSRA), to which the WPA is an amendment, is "the exclusive remedy of the federal employee." *See, e.g., Stephens v. Dep't of Health & Human Services*, 901 F.2d 1571, 1575 (11th Cir. 1990). In fact, in *Stephens*, where the plaintiff contended he could obtain relief under the APA despite the exclusive nature of the CSRA, the Eleventh Circuit held that the CSRA precludes any additional review. *Id.* at 1576 ("'The comprehensive nature of the . . . CSRA indicates a clear congressional intent to permit federal court review as provided in the CSRA, or not at all.'") (citing *Veit v. Heckler*, 746 F.2d 508, 511 (9th cir. 1984)). The Supreme Court has recognized the exclusive nature of the CSRA, *see United States v. Fausto*, 484 U.S. 439 (1988), and because the "CSRA provides adequate remedial mechanisms," *Stephens*, 901 F.3d at 1576, Plaintiff Leroy Smith is limited to seeking relief under its terms.

"Federal civil servants are now protected by an elaborate, comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors and procedures – administrative and judicial – by which improper action may be redressed." *Bush v. Lucas*, 462 U.S. 367, 385 (1983). That scheme, it is now well established, "provides meaningful remedies for employees who may

have been unfairly disciplined for making critical comments about their agencies."

*Id.* at 386. Plaintiff Smith cannot avoid that scheme by seeking equitable relief in

this action. Courts have clearly held that "[t]he CSRA's elaborate remedies show

that judicial interference in federal employment is disfavored, whether the

employee requests damages or injunctive relief." *Saul v. U.S.*, 928 F.2d 829, 843

(9th Cir. 1991); *accord Lomardi v. Small Business Admin.*, 889 F.2d 959, 961-62

(10th Cir. 1989) ("[J]udicial intervention is disfavored whether it is accomplished

by the creation of a damages remedy or injunctive relief."); *Veit v. Heckler*, 746

F.2d 508, 510-11 (9th Cir. 1984) (holding, in a case where injunctive relief was

sought, that neither the CSRA, nor the APA, gave the district court the power or

authority to review the complained of employment practices). In *Brown v.

Chertoff*, where the terminated federal employee (Brown) complained of reprisal

for whistleblowing in violation of the WPA, alleged that his constitutional rights

were violated, and sought APA injunctive relief, the court expressly held that

"employees like Brown may bring no APA claims, direct constitutional claims, or

*Bivens* actions." 512 F. Supp. 2d 1367, 1370 (S.D. Ga. 2007). The court, applying

the Eleventh Circuit's *Stephens* case, which is consistent with the law of other

circuits, held that the CSRA is the exclusive remedy. *Id.* at 1371-72.

Accordingly, because Plaintiff Leroy Smith must seek relief for his employment related complaints, including his WPA claims, under the exclusive remedial framework of the CSRA, his claims must be dismissed.

### F.    Venue and Joinder

In addition to the reasons discussed, Smith (a resident of Arizona (Compl. ¶ 8)) and Garwood (a resident of New Jersey (Compl. ¶ 18)) must be dismissed because their claims are separable from the other Plaintiffs and venue is not proper in this Court as neither of them are residents of this state, worked at FCI Marianna, Florida (Doc. 14-16, ¶ 3(a),(d)), or expressly allege exposure at FCI Marianna, Florida (Compl. ¶¶ 8-9; 18-20).

First, and foremost, to the extent that Plaintiffs Smith and Garwood suffered injuries, they have failed to alleged (and cannot allege) any nexus between those injures and the Northern District of Florida. Venue, accordingly, is not proper in this Court. *See Gulf Power Co.*, 2008 WL 563484 *5.

Second, Plaintiffs Smith and Garwood are not properly joined in this action. Joinder is proper, under Fed. R. Civ. P. 20(a), where a plaintiff "asserts a right to relief jointly, severally, or in the alternative with the party who filed the action, that right to relief arises from the same underlying transaction or series of transactions, and the claims have a common factual or legal basis." *Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir. 2002). Here, Plaintiffs have not pled which, if any, of their legal

rights have been violated; thus, they cannot be said to have established a right to relief under the same transaction, with a common factual or legal basis. In fact, since Plaintiffs Smith and Garwood fail to provide any allegations with respect to where they were injured, what injuries they suffered, or how they suffered those injuries, their claims cannot be compared to the remaining Plaintiffs for purposes of determining proper joinder under Fed. R. Civ. P. 20 and 21. Moreover, since it is established that Plaintiffs Smith and Garwood did not work at FCI Marianna, if joinder were permitted to stand, this court would be compelled to analyze the operations of facilities outside its jurisdiction, which may or may not have followed procedures similar to those at FCI Marianna. Then it would be compelled to consider the injuries, if any, of Plaintiffs Smith and Garwood, and make independent determinations as to each of their injuries and the causes of them. Courts have denied joinder where such individualized assessments are required. *See, e.g., Grayson v. K-Mart Corp.*, 849 F. Supp. 785, 788-89 (N.D. Ga. 1994); *Bailey v. Prison Health Services, Inc.*, 2007 WL 3171319, *3 (M.D. Fla. Oct. 25, 2007).

## IV.    Conclusion

**IT IS ORDERED:**

1.    Government Defendants' Motion to Dismiss (Doc. 14) is **granted.**

2.    Plaintiffs are granted leave to amend their complaint pursuant to Fed.

R. Civ. P. 15 within fourteen days of this order.

3.    If Plaintiffs have not amended their complaint within fourteen days of

this order, the clerk is directed to close the case in its entirety for all

purposes.

4.    Defendants' Motion for Summary Judgment against Leroy Smith

(Doc. 12) is **denied as moot.**

5.    Defendants' Motion for Protective Order and Stay of Discovery

(Doc. 40) is **denied as moot.**

6.    Plaintiffs' Motion for Leave from Stay to Conduct Limited Discovery

(Doc. 48) is **denied as moot.**

7.    Plaintiffs' Motion for Leave to Take Depositions and Case Status

Conference (Doc. 63) is **denied as moot.**

**ORDERED** on September 22, 2009.

/S/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**